In the Matter of the Judicial Settlement of the Account of
    FREDERICK J. R. CLARKE, as Executor, etc., of JOHN J.
    LINSON, Deceased.

ERNEST J. LINSON, Contestant, Appellant; FREDERICK J. R.
    CLARKE, as Executor, and Others, Respondents.

                Third Department, November 15, 1916.

                        Will — construction.

A testator, a lawyer of distinction and wide experience, was survived by
    four sons. In the 2d clause of his will he provided as follows:
    "Inasmuch as my eldest son Ernest J. Linson has, during my lifetime,
    enjoyed so much of my estate as would be equal to or greater than the
    share hereinafter bequeathed to his brothers, I make no provision for
    him by this Instrument." By the 4th clause he created the residue of
    his estate into a trust fund, and directed one-quarter of the income to
    be paid to each of his three sons other than Ernest, and one-quarter to
    the wife of Ernest. At the majority of his grandson Paul, son of
    Ernest, the testator directed the trust property to be divided into four
    equal parts, one-quarter to go to each of the three sons mentioned and
    one-quarter to Paul. He further directed in case Paul should die with-
    out issue before reaching his majority, that the entire estate be divided
    into three equal parts and paid to the three sons mentioned. He then
    further provided that if any of his sons entitled to share in the trust
    fund should die before the termination of the trust estate and leave no
    issue, then "the share in the income and in the principal which the
    brother so dying would have taken if living be divided among his
    brothers him surviving, and said Paul Linson and the issue of any of his
    brothers who may have died before him."
Provisions of the will construed, and held, that the son Ernest, under the
    4th clause of the will, is entitled to share equally with his other brothers
    and the grandson Paul in the portion of the trust estate which was
    created for the benefit of the brother Harold, who died without issue.
COCHRANE and LYON, JJ., dissented, with opinion.

APPEAL by Ernest J. Linson from part of a decree of the
Surrogate's Court of the county of Ulster, entered in the office
of said Surrogate's Court on the 6th day of July, 1916, adjudg-
ing, among other things, that appellant is not entitled under
the will of John J. Linson, deceased, to share in either the
principal or the income of said testator's estate, and that he is
not entitled to any share in the principal of the trust fund or

the income thereof created by said will for the benefit of the testator's son, Harold M. Linson, who died December 16, 1915.

*Frank W. Brooks*, for the appellant.

*Howard Chipp*, for the respondent Frederick J. R. Clarke, as executor.

*Everett Fowler*, special guardian for the respondent Paul Linson.

*Roger H. Loughran*, for the respondent John J. Linson, as administrator, etc., of Harold M. Linson, deceased.

HOWARD, J.:

On the 11th day of September, 1914, John J. Linson, of Kingston, N. Y., executed his will. He died August 2, 1915. He was a lawyer of distinction and wide experience. His estate amounted to more than $57,000. He was survived by four sons. The 2d clause of his will reads as follows: " *Second.* Inasmuch as my eldest son, Ernest J. Linson has, during my lifetime, enjoyed so much of my estate as would be equal to or greater than the share hereinafter bequeathed to his brothers, I make no provision for him by this Instrument."

By the 3d clause of his will he devised his dwelling house. By the 4th clause he created the residue of his estate into a trust fund and directed one-quarter of the income to be paid to each of his three sons, other than Ernest, and one-quarter to the wife of Ernest. At the majority of his grandson, Paul Linson, son of Ernest, the testator directed the trust property to be divided into four equal parts, one-fourth to go to each of the three sons who are mentioned by name, and one-fourth to Paul. He further directed, in case Paul should die without issue before reaching his majority, that the entire estate be divided into three equal parts and paid to the three sons whose names are mentioned. The testator then further provided as follows: "In case any of my sons entitled to a share in the fund so held in trust for him die before the termination of the trust estate I direct that his share in the income and in the principal estate be paid to his issue if he leave any; if he leave no issue then I direct that the share in the income and in the principal which the

brother so dying would have taken if living be divided among his brothers him surviving and said Paul Linson and the issue of any of his brothers who may have died before him."

This latter sentence seems to conflict with and be repugnant to the 2d clause of the will above quoted. The learned surrogate has held this sentence insufficient to entitle Ernest to share in any part of the trust fund. The surrogate appears to have construed the words "his brothers him surviving" to mean only the brothers mentioned in the 4th clause. The executor asks us to give the words the same construction, and to hold that the 2d clause dominates and excludes Ernest absolutely from any possible contingent participation in the trust estate.

It should be our purpose in studying the language of this testament, as it is always the purpose of courts in construing wills, to arrive at the intent of the testator. To discover that intent in this instance is a task not free from difficulty. The evident scheme of the will is that each of the four sons shall share equally in the bounty of the father. Ernest, the eldest, had, at the time of the execution of the will, already enjoyed a share of his father's estate equal to the amount which the testator bequeathed to each of the other sons. This is declared by the testator in the 2d clause. That was his reason for making no provision for Ernest. It was the purpose of the father to establish an equilibrium between the sons — and, of course, maintain that equilibrium. He did not wish that his entire substance be enjoyed by his sons. Nancy, his daughter-in-law, and Paul, his grandson, were also objects of his bounty; but in the treatment of the four sons equality was the principle which guided the testator. Exact equality could not be attained for that which had already gone to Ernest, in the nature of things, could not be exactly measured; but substantial equality was his aim. Therefore, he provided in the 4th clause concerning Paul's share in the trust estate, that if Paul should die before his majority, leaving no issue, the whole trust fund should be divided into three equal parts and distributed to the three sons mentioned in the 4th clause. Thus, by this scheme, that portion of the estate of the father given to the sons is divided into four equal parts. Ernest had been given his one-quarter before the death of the testator, each of

the other three is to be given his one-quarter after the death of the testator. So far the scheme of equilibrium is maintained.

. But now comes the provision for the possible death of one of the three sons, mentioned in the 4th clause, without issue. Were the will to be so construed as to divide the one-quarter share of one of these three sons, in case of his death, among two of his surviving brothers and Paul, instead of among the three surviving brothers and Paul, the result would be that two of the brothers would receive from the father four-twelfths of the total amount given to the four sons, while the other brother would receive only three-twelfths. This, of course, would unbalance the scheme of equilibrium. And then, following out the possible effects of such a construction of the will, if another one of the three sons should die and his four-twelfths should be divided between one of the surviving sons and Paul, the result would be that one of the sons would receive from the father's substance six-twelfths of the total amount given to the four sons. Then if Paul should die and his three-twelfths be given to this one favored surviving son he would receive nine-twelfths, or three-quarters, of the total amount given to the four sons, while Ernest would receive only one-quarter. A construction of the will productive of such a result would be shocking to the scheme of equality.

Had it been the testator's purpose to accomplish such a result instead of continuing the idea of equality, a fit expression would have removed all doubt. It will be noted that such an expression, absolutely removing Ernest from all possibility of participation, is employed in the 3d clause of the will and again in the 4th clause just before the sentence under consideration. In the 3d clause, speaking of his dwelling house, after having devised a remainder to his three sons, Harold, Kenneth and John, the testator provides: "If he leave no issue then to the surviving of the three mentioned brothers." This removes all doubt; Ernest is absolutely excluded. And again in the 4th clause which concerns the trust property the testator provided: "But if he [Paul] die leaving no issue before he attains his majority then I direct that the property the subject of this clause in my will be divided into three equal parts and paid to my three sons Harold M. Kenneth K. and John J. Linson." Again

there is no doubt and Ernest is absolutely excluded.   But in the very next sentence the testator, in attempting to provide for the contingency of the death without issue of either of these three sons, says: " If he leave no issue then I direct that the share in the income and in the principal which the brother so dying would have taken if living be divided among his brothers him surviving and said Paul Linson   *   *   *." Here Ernest is not excluded; he is included.   It must be assumed that the testator, an experienced lawyer, the leader of the Ulster county bar, would again at this point have employed suitable and definite language excluding Ernest had that been his purpose.   He did not do so, and his failure to do so indicates a continuation and perfection of his scheme of equality between the sons.

We have considered well the adjudicated cases cited in the briefs, but none of them is decisive here.   We even recognize our right to supply words in the 4th clause to carry out the intent of the testator if, in our judgment, that be necessary. · (*Eidt* v. *Eidt*, 203 N. Y. 325.) We have also endeavored to obtain assistance from the familiar canons of construction which counsel have called to our attention, particularly the one which runs to the effect that where two provisions in a will are repugnant to each other the later should prevail.   Canons of construction are rules which have been evolved by centuries of experience, but they are like trees blazed in the forest; they guide the traveler in a general direction without fixing a well-defined and certain path.   So in this case we have relied somewhat upon these ancient rules for guidance, but have preferred to follow the modern plan adopted in *Eidt* v. *Eidt* (*supra*), and search " through the entire contents of the will " for the intention of the testator.

Having made such a search, we have arrived at the conclusion that Ernest J. Linson, under the 4th clause of the testator's will, is entitled to share equally with his other brothers and Paul Linson, in that portion of the trust estate which was created for the benefit of Harold M. Linson.

The decree of the surrogate should be so modified.

All concurred, except COCHRANE, J., who dissented in an opinion, in which LYON, J., concurred.

COCHRANE, J. (dissenting):

I dissent, for the following reasons:

*First.* The construction being placed on this will is against the expressly declared intention of the testator. At the very outset of his will, after directing the payment of his debts and funeral expenses, the testator states unequivocally his reason for excluding his son Ernest from the benefits of his will and concludes such statement of his reason as follows: "I make no provision for him by this Instrument." The court is about to do for Ernest what the testator himself declared he had no intention of doing.

*Second.* The construction which the court places on the will is contrary to its manifest scheme. The testator placed Ernest's wife and son Paul in the place of Ernest, and evidently intended that they should have the share which naturally and ordinarily Ernest would take. In the disposition of the residuary estate the wife and son of Ernest received the same consideration as any of Ernest's three brothers. The reasoning of Mr. Justice HOWARD seems to me to overlook the fact that in this clause of the will which occasions the present difficulty, Paul is included as sharing in the portion of the estate which would go to Harold if he had lived. If Ernest be excluded from this distribution the two surviving brothers and Ernest's son Paul will take Harold's share or each will receive one-fourth of the entire residuary estate of the testator. This is an equilibrium established and maintained. But if now both Ernest and his son Paul are to participate in that portion of the estate which would go to Harold if he had lived, then the two other surviving brothers and Paul will each receive five-sixteenths of the residuary estate and in addition thereto one-sixteenth will go to Ernest. In other words, Ernest and his son Paul together will receive six-sixteenths of the residuary estate and the other two surviving brothers will only receive five-sixteenths each. This unbalances the equilibrium which the prevailing opinion correctly states it was the purpose of the father to establish and maintain.

*Third.* The language of the latter part of the 4th clause under consideration indicates that the testator did not have his son Ernest in mind when using this language. The

language is: "If he leave no issue then I direct that the share in the income and in the principal which the brother so dying would have taken if living be divided among his brothers. him surviving and said *Paul Linson and the issue of any of his brothers* who may have died before him." When the testator used the words " any of his brothers " in the words last quoted it cannot be that he intended to include Ernest, because Paul was the issue of Ernest and he had just immediately mentioned Paul and clearly he did not intend to include him again in the expression immediately following " and the issue of any of his brothers." But he must have included him again in that expression if he included Ernest as one of the brothers. Assume that Ernest had died before Harold. Then paraphrasing the above language to meet such a situation it would read as follows: " I direct that the share which Harold would have taken if living be divided among his brothers him surviving and said Paul Linson, and the issue of Ernest (Paul)." This is a *reductio ad absurdum;* which I do not think the testator intended.

There is no difficulty in construing this will if we simply try to give effect to the testator's declared purpose at the outset thereof: " I make no provision for him by this Instrument." Having thus disposed of Ernest it is not strange that in the latter part of the will he seems not to include Ernest as being the brother of his other sons. It is the brothers for whom he is providing in his will that he has in mind. He has previously disposed of Ernest and stated his reasons for doing so. That leaves only three brothers to be provided for. It seems to me clear not only from the language used but from the manifest scheme of the will itself as well as from the proprieties and equities of the situation that Ernest has no share in the estate.

LYON, J., concurred.

Decree modified in accordance with opinion of HOWARD, J., and as so modified affirmed, without costs.